UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 19-20305
                                              Hon. Mark A. Goldsmith

DOMINIQUE DIXSON, et al.

        Defendants.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT DOMINIQUE DIXSON'S MOTION TO SUPPRESS**
**EVIDENCE OF A VEHICLE SEARCH (Dkt. 38), MOTIONS FOR REVOCATION OF**
**DETENTION ORDER (Dkts. 59, 76), MOTIONS TO DISMISS BASED ON**
**ENTRAPMENT BY ESTOPPEL (Dkts. 60, 75), AND MOTION TO DISMISS FOR LACK**
**OF JURISDICTION (Dkt. 74)**

      Defendant Dominique Dixson was indicted on the charge of being a felon in possession of

a firearm stemming from an investigation that began when federal agents saw pictures of Dixson

at a local gun range on his Instagram account. Dixson has filed a number of motions both pro se

and through counsel seeking to suppress evidence, dismiss the indictment, and revoke his detention

order. For the reasons discussed below, Dixson's motions are denied.

**I. BACKGROUND**

      The Government's investigation into Dixson began when an agent viewed Dixson's

Instagram account, "kiing_messiah." Compl. ¶ 7 (Dkt. 7). Instagram is a widely used mobile

phone app used to share digital photos and videos. Some of those photos showed Dixson at Action

Impact, a firearm shop and gun range, holding up shooting-practice targets. Resp. at 5 (Dkt. 50).

This caught the agent's attention because, as a felon, Dixson is not legally allowed to possess

firearms. Based on Dixson's photos, agents visited Action Impact and learned that Dixson and his

wife had purchased a Taurus, G2C, 9mm caliber, semi-automatic pistol, along with an extended magazine. Id. at 5-6. Video surveillance showed Dixson firing the weapon at Action Impact. Id. at 7. Based on the evidence from Action Impact, agents secured a search warrant and later arrested Dixson during a traffic stop and found the Taurus 9mm firearm in the glovebox shortly thereafter. Id. at 10-11.

## II.  DISCUSSION

Dixson has filed a motion to suppress evidence of a vehicle search (Dkt. 38), two motions for revocation of detention order (Dkts. 59, 76), two motions to dismiss based on entrapment by estoppel (Dkts. 60, 75), and a motion to dismiss for lack of jurisdiction (Dkt. 74).[1]  Dixson's motions will be taken in turn.

### A.  Motion to Suppress Evidence From Vehicle Search (Dkt. 38)

Dixson moves to suppress the gun found in his vehicle after a warrantless search of his vehicle. Mot. at 1. The Government argues that the automobile exception to the warrant requirement defeats Dixson's argument. Resp. at 16-17 (Dkt. 50).[2] The Government is correct.

As noted above, Dixson's Instagram posts led agents to investigate his activities at Action Impact. After investigating the matter, agents recovered video evidence that Dixson and his wife purchased and used a Taurus 9mm at the Action Impact gun range. Resp. at 6. The firearm was kept in a black pouch. Id. Further evidence showed that Dixson purchased an extended magazine

---

[1] Dixson also has a motion to suppress related to his Instagram account (Dkt. 37) pending, which will be addressed by a separate order.

[2] The Government also argues that the search was incident to arrest, which is also an exception to the warrant requirement. Because the automobile exception provides a suitable exception to the warrant requirement, analysis of other exceptions is unnecessary.

for the firearm.  Id.  Based on the evidence, agents secured a search warrant for Dixson's home and a warrant for his arrest for being a felon in possession of a firearm.  Id. at 8.

On April 30, 2019, Dixson posted a video to his Instagram account of himself in his vehicle rapping and flashing what the agents suspected was the extended magazine.  Id. at 9.  The following day, Dixson posted another video of himself in his vehicle rapping with the extended magazine in his lap.  Id.  That same day, agents observed Dixson entering his vehicle carrying a small black pouch, which appeared to be the same one used to carry the Taurus 9mm.  Id.  The agents saw Dixson making several motions on the passenger side of the vehicle and then drive away.  Id.  Warren police officers conducted a traffic stop shortly thereafter.  Id. at 10.  Dixson refused to unlock his car door at first.  Id.  After officers attempted to break the car window, Dixson opened the car doors and was arrested.  Id.

According to Dixson, the arresting officers searched his car at the time of his arrest, but did not find any firearms.  He says that his car was brought back to his home, where the officers executed the search warrant.  The agents also searched Dixson's vehicle again, which revealed the Taurus 9mm in the glovebox.  The Government does not address this gap in time.  However, the gap in time is not relevant to the automobile exception, because the officers had probable cause to search Dixson's vehicle.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."  Coolidge v. New Hampshire, 403 U.S. 443, 454 (1971) (internal marks and citations omitted).

One such exception, the automobile exception, has been invoked by the Government in this case to justify the search of Dixson' car.

The Government argues that the automobile exception relieved the agents of the warrant requirement.  Dixson did not file a reply brief in support of his motion addressing the automobile exception.  Near the end of his brief in support of his motion, however, Dixson passingly asserts that the arresting officers did not have "reasonable" cause to believe the vehicle contained evidence of the alleged crime, especially in light of no evidence being uncovered during the first search. Mot. at 3-4.  Dixson is mistaken.

The Sixth Circuit has consistently held that no exigent circumstances are required to search a vehicle where probable cause exists to do so.  See, e.g., United States v. Hofstatter, 8 F.3d 316, 322 (6th Cir. 1993).  "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (internal marks and citations omitted); see also United States v. Graham, 275 F.3d 490, 510 (6th Cir. 2001) ("[A] vehicle may be searched, without any indication of exigency, if the searching officers have probable cause to believe that it contains instrumentalities or evidence of the crime.").

Here, the agents had probable cause to believe the firearm would be located in Dixson's vehicle.  They knew that he and his wife had recently purchased the Taurus 9mm—along with a black pouch to carry the firearm—and an extended magazine.  Dixson posted two videos shortly before his arrest showing himself in his vehicle with what appeared to be the extended magazine. Agents also saw Dixson leave his home with the black bag used to carry the Taurus 9mm.  Dixson was seen making movements on the passenger side of his vehicle shortly before driving away from his home.  After the officers conducted the traffic stop, Dixson refused to unlock his doors and did

4

so only after the officers attempted to break his car windows.  Agents had both a warrant for Dixson's arrest for being a felon in possession of a firearm, and a search warrant to search his home for the firearm.  Based on this information, there was a fair probability that the Taurus 9mm would be found in his vehicle's glove box.

Because agents had probable cause to search for a firearm in Dixson's vehicle, under the automobile exception, no search warrant of the vehicle was required.  Dixson's motion to suppress evidence of the vehicle search is denied.

### B.  Motions to Revoke Detention Order (Dkts. 59, 76)

Dixson moves to revoke his detention order entered on May 6, 2019 (Dkt. 11).[3]  Dixson's recounting of the procedural history in his motion is somewhat difficult to follow.  He says that after Magistrate Judge Grand entered the order of detention that he filed the present motion. However, that recounting ignores that this is the second such motion filed by Dixson.  His first motion was filed on May 17, 2019 (Dkt. 17).

The Court held a hearing on Dixson's initial motion for revocation of his detention order on May 31, 2019, and the Court subsequently issued a thirteen-page opinion denying Dixson's motion on June 12, 2019 (Dkt. 41).  Dixson's present motion does not acknowledge the Court's previous opinion denying revocation of detention, nor does he analyze the four factors under 18 U.S.C. § 3142(g).  Dixson, acting pro se, also filed a third motion seeking revocation of his detention order (Dkt. 76).[4]  Although Dixson engages in a more thorough analysis in his pro se

---

[3] Dixson says that he is challenging the February 26, 2019 order, but this appears to be a scrivener's error, as the criminal complaint was not filed in this action until April 30, 2019.

[4] The Court normally prohibits a defendant from filing his own motions when he is represented. However, Dixson filed three motions pro se between the time one of his attorneys withdrew and new counsel appeared on his behalf three days later (Dkts. 70, 71, 72).

motion, he again ignores the Court's previous order and the reasoning therein.  Because Dixson has not advanced any new facts or identified any defects in the Court's prior ruling, Dixson's motions (Dkts. 59, 76) are denied for the reasons stated in the Court's prior ruling (Dkt. 41).

### C.  Motions to Dismiss Indictment Based on Entrapment by Estoppel (Dkt. 60, 75)

Dixson argues that the indictment should be dismissed due to entrapment by estoppel, because an employee at Action Impact gun range—assertedly a government agent—authorized Dixson to use a firearm at the gun range.  Br. in Supp. of Mot. at 2-3 (Dkt. 60-1); see also Dixson's pro se motion (Dkt. 75).  In response, the Government makes two principal arguments: (i) the employee was not, as a matter of law, a federal agent, and alternatively, (ii) resolution of this issue is not appropriate on a pre-trial motion to dismiss.  Resp. at 1-2.  While the first argument is well supported, the more prudent course is to defer this matter for trial, in accordance with the Government's second argument.  Therefore, Dixson's motions are denied, without prejudice to his raising this issue at trial in an appropriate fashion.

The defense of entrapment by estoppel applies when a defendant relies on a government actor's incorrect advice that his actions would be lawful.  Cox v. State of La., 379 U.S. 559, 571 (1965).  To prove the defense, "a defendant must show that: (1) a government agent announced that the charged conduct was legal; (2) the defendant relied on the agent's announcement; (3) the defendant's reliance was reasonable; and (4) given the defendant's reliance, prosecution would be unfair."  United States v. Triana, 468 F.3d 308, 316 (6th Cir. 2006) (citing United States v. Levin, 973 F.2d 463, 468 (6th Cir. 1992)).

In his pro se motion and in his counsel's motion, Dixson argues that the Action Impact employee is a federal agent as a matter of law, and he requests an evidentiary hearing on the matter.  See Mot. at 5-6 (citing United States v. Tallmadge, 829 F.2d 767 (9th Cir. 1987) (finding licensed

firearms dealers are federal agents for purposes of entrapment by estoppel).  However, <u>Tallmadge</u> stands conspicuously alone in staking out that position.

Although the Sixth Circuit has not addressed <u>Tallmadge</u>, all other circuits addressing the issue have been unpersuaded by the majority opinion that a federally licensed firearm dealer is a federal agent.  Those courts have agreed with the dissent's view in <u>Tallmadge</u> that a gun dealer is not a federal employee and has no authority to bind the federal government.  <u>See</u> <u>United States v. Hardridge</u>, 379 F.3d 1188, 1194 (10th Cir. 2004) (holding that a licensed firearms dealer is not a government agent for the purposes of an entrapment by estoppel defense); <u>see also</u> <u>United States v. Howell</u>, 37 F.3d 1197, 1205 (7th Cir. 1994) (holding that a federal license to sell firearms does not transform a gun seller into a government official); <u>United States v. Billue</u>, 994 F.2d 1562, 1568-1569 (11th Cir. 1993) (holding that a federal license to sell firearms does not transform private licensees into government officials, thereby creating a potential entrapment by estoppel defense), <u>cert. denied</u>, 510 U.S. 1099 (1994); <u>United States v. Austin</u>, 915 F.2d 363 (8th Cir. 1990) (holding that federally licensed firearms dealers are not public officials for purposes of entrapment by estoppel defense), <u>cert. denied</u>, 499 U.S. 977 (1991).  This Court too agrees with the <u>Tallmadge</u> dissent that "[t]he idea that the holder of a government license can estop the government's enforcement of its penal laws has explosive potential." <u>Tallmadge</u>, 829 F.2d at 779 (9th Cir. 1987) (Kozinski, J., dissenting).

This weight of authority supports the Government's argument that Dixson is incorrect, as a matter of law, in his contention that the gun range employee is a federal government employee. Notably, however, these decisions were all made in the context of trials, either affirming a bench trial decision (<u>Hardridge</u>) or affirming refusal to give a jury instruction on the entrapment issue (<u>Howell</u>, <u>Billue</u>, <u>Austin</u>).  The trial context allowed for full development of a record and insured

that the defendants had an opportunity to present whatever specific evidence they had to make out their defense.

Addressing the agency sub-issue and the full entrapment issue at trial would have the same advantages in the present case. It would also be consistent with Federal Rule of Criminal Procedure 12, which permits pre-trial resolution of a defense only if it can be done without a trial on the merits. Fed. R. Crim. P. 12(b). This means that a court may not adjudicate the validity of a defense in advance of trial if doing so would "invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). At this point, it is unclear whether there is a factual dispute on the entrapment issue, as no specific facts substantiated by affidavits have been presented to the Court. But if there is a dispute, the jury will be the one to decide the issue. See United States v. Schaffer, 586 F.3d 414, 426 (6th Cir. 2009) (affirming denial of Rule 12(b) motion and denial of evidentiary hearing request, as "[i]t is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question."); but see United States v. Levin, 973 F.2d 463, 468-470 (6th Cir. 1992) (affirming grant of Rule 12(b) motion on entrapment grounds where facts were undisputed).

Therefore, Dixson's motions to dismiss based on entrapment by estoppel are denied without prejudice to his raising this issue in an appropriate manner at trial.

**D. Dixson's Pro Se Motion to Dismiss for Lack of Jurisdiction (Dkt. 74)**

In Dixson's final motion, filed pro se, Dixson argues that this Court lacks jurisdiction over this matter (Dkt. 74). Dixson's motion is difficult to follow and his legal citations, going all the way back to Marbury v. Madison, are numerous and often disjointed. It appears that Dixson is making five distinct arguments. First, he argues that the Government has not properly alleged that

the Taurus 9mm had previously traveled in commerce or affected commerce.  Second, he argues that the Government is impermissibly attempting to "regulate" Michigan Compiled Laws § 750.224f.  Third, he argues that Congress lacked the authority to enact § 922(g).  Fourth, he argues that the Government's proffered ties to interstate commerce are deficient.  Finally, he argues that the Government's position essentially "obliterates" the distinction between national and local powers.  The Court will attempt to address Dixson's concerns.

First, Dixson is mistaken that the Government failed to allege that the Taurus 9mm had previously traveled in interstate commerce.  The Government alleges that Dixson knowingly possessed "one Taurus, G2C, 9mm caliber, semi-automatic pistol, said firearm having previously traveled in interstate and/or foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1)."  First Superseding Indictment at 1-2 (Dkt. 21).  Therefore, Dixson's first argument is without merit.

Second, the Government is not attempting to "regulate" Michigan Compiled Laws § 750.224f, the state analog to 18 U.S.C. § 922(g)(1).  Although not entirely clear, it appears that Dixson is making a double jeopardy argument related to dual sovereignty.  See Mot. at 4.  However, the law is well established that "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'"  Heath v. Alabama, 474 U.S. 82, 88 (1985) (quoting United States v. Lanza, 260 U.S. 377, 382 (1922)).  "States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own inherent sovereignty, not from the Federal Government."  Id. at 89 (internal marks and citations omitted).  Therefore, the Government is not attempting to "regulate" state criminal law, but instead is proceeding under its power to prosecute derived from its own sovereignty.

Third, Dixson argues that Congress lacked the authority to enact § 922(g) (citing <u>United States v. Lopez</u>, 514 U.S. 549 (1995); <u>United States v. Morrison</u>, 529 U.S. 598 (2000); <u>Jones v. United States</u>, 529 U.S. 848, 850 (2000)).  <u>Lopez</u>, <u>Morrison</u>, and <u>Jones</u> are all cases where the Supreme Court interpreted the limits of Congress's authority under the Commerce Clause.  <u>Lopez</u> is the case most analogous to the present case.  In <u>Lopez</u>, the Court held that Congress exceeded its authority under the Commerce Clause when it passed the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), because "[t]he Act neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce."  514 U.S. at 551.  In the wake of <u>Lopez</u>, defendants quickly sought to challenge § 922(g).  The Sixth Circuit, and ten other courts of appeal, found that § 922(g) "'represents a valid exercise of legislative power under the Commerce Clause,'" because the jurisdictional element of § 922(g) "'provides the requisite nexus with interstate commerce.'"  <u>United States v. Chesney</u>, 86 F.3d 564, 568 (6th Cir. 1996) (quoting <u>United States v. Turner</u>, 77 F.3d 887, 889 (6th Cir. 1996)).  Therefore, Dixson's argument to the contrary is without merit.

Fourth, Dixson argues that the Government's proffered evidence that the firearm in this case traveled in interstate commerce is weak.  However, as other courts have recognized, "[b]ecause there are no gun manufacturers in Michigan, virtually every gun comes from another state."  <u>United States v. Garcia</u>, 143 F. Supp. 2d 791, 807 (E.D. Mich. 2000).  Therefore, the Government's allegation that the Taurus 9mm has traveled in interstate commerce appears plausible.

Finally, Dixson appears to be arguing that he cannot be held criminally responsible under § 922(g) for possessing a firearm at a local gun shop, because to do so would "obliterate" the distinction between national and local powers.  Mot. at  10 (citing <u>United States v. Am. Bldg.</u>

Maint. Indus., 422 U.S. 271, 275 (1975)).   American Building Maintenance was a civil anti-trust case interpreting the phrase "engaged in commerce" as used in the Clayton Act.  In that case, the Court found that a janitorial company's purchase of goods from a local supplier, even though the goods had once been in interstate commerce, did not constitute "engaging in" the "acquisition of goods in interstate commerce."  Id. at 285.  Dixson appears to be arguing along the same lines, i.e., that he cannot be held criminally responsible for possession of a firearm affecting commerce when he was not involved in the interstate transport of the firearm.   However, that argument is foreclosed.  In Barrett v. United States, 423 U.S. 212 (1976), the Supreme Court held that the "very structure" of the federal Gun Control Act, which includes § 922(g), "demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous."  Id. at 218; see also United States v. Jones, 533 F.2d 1387, 1393 (6th Cir. 1976) (holding that "proof that the firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected commerce").

Accordingly, Dixson's pro se motion to dismiss for lack of jurisdiction (Dkt. 74) is denied.

### III.  CONCLUSION

For the reasons stated above, the Court denies Dixson's motion to suppress evidence of a vehicle search (Dkt. 38), his motions for revocation of detention order (Dkts. 59, 76), his motions to dismiss based on entrapment by estoppel (Dkts. 60, 75), and his motion to dismiss for lack of jurisdiction (Dkt. 74).

SO ORDERED.

Dated:  May 28, 2020                         s/Mark A. Goldsmith
          Detroit, Michigan                    MARK A. GOLDSMITH
                                               United States District Judge

11